*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0378p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-5719

CHRISTOPHER FRAZIER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 03-00030—Joseph H. McKinley, Jr., District Judge.

Argued: April 29, 2005

Decided and Filed: September 6, 2005

Before: SUHRHEINRICH, BATCHELDER, and GIBSON, Circuit Judges.[*]

———————————

**COUNSEL**

**ARGUED:** Jennifer S. Roach, THOMPSON HINE, Cleveland, Ohio, for Appellant. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Jennifer S. Roach, Thomas L. Feher, THOMPSON HINE, Cleveland, Ohio, for Appellant. Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Christopher Frazier appeals the district court's denial of his motion to suppress evidence obtained during a search of his residence at 115 South Jeffries Street, Morganfield, Kentucky. Alternatively, Frazier argues that we should remand this case to the district court, with instructions to hold an evidentiary hearing to determine whether the affidavit supporting the search warrant for his home contained knowing and reckless falsehoods, and that we should grant him a new trial because his counsel was constitutionally ineffective. Because we conclude that the district court did not err in applying the good faith exception set out in *United States v. Leon*, 468 U.S. 897 (1984), we will AFFIRM the

———————————

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

district court's order denying Frazier's motion to suppress. Further, we will DENY his request for an evidentiary hearing, and dismiss without prejudice his claim of ineffective assistance of counsel.

## I.

In late 1999, numerous police agencies, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), began receiving information that an informal organization of about 25 people, led by Frazier, was dealing drugs in the Dunbar Heights Apartments, a federal housing project in Morganfield. In October of 2002, a confidential informant, "CI-178," volunteered to provide the authorities with information on Frazier's organization and began making "controlled buys" of drugs under the supervision of ATF Special Agent Kirk Steward. Because CI-178 wore a "wire" during some of the buys, the ATF was able to record what was said during two of the transactions. On one such occasion, CI-178 met with Czaja McGuire, who is alleged to be a member of Frazier's conspiracy, to purchase crack cocaine. CI-178 accompanied McGuire to Frazier's residence, which at that point was at 759 Culver Court in the housing project, where McGuire obtained a quantity of crack cocaine. After they left Frazier's residence, CI-178 purchased 3.7 grams of crack cocaine from McGuire. The second recorded transaction occurred on December 12, 2002, when CI-178 went to Frazier's Culver Court residence to purchase crack cocaine. Once inside, Frazier arranged for CI-178 to buy drugs from James Harris, another member of Frazier's organization.

On July 10, 2003, seeking six search warrants relating to Frazier's drug conspiracy, Agent Steward presented to United States Magistrate Judge Robert Goebel six warrant affidavits, the last of which was in support of a warrant to search Frazier's current home on Jeffries Street. This affidavit describes the details of Frazier's criminal enterprise and recounts the report of an anonymous cooperating witness, "CW-1," who had seen Frazier selling drugs out of the housing project in Morganfield. The Frazier affidavit also described the McGuire and Harris transactions, but did not specify that these were controlled buys that were caught on tape. The affidavit further states that CI-178 had acted as a "middle man" during a drug transaction between Frazier and an unidentified Hispanic male[1] at Frazier's Culver Court residence. Paragraph nine of the Frazier affidavit says that Frazier was evicted from the Culver Court residence in May 2003, and that shortly thereafter, housing authorities found drugs in that residence while cleaning it. The affidavit also states that Sheriff's Deputy Jason Corbitt relayed to Agent Steward the statement of Patrick Black, a Frazier associate arrested in a seemingly unrelated investigation, that Black had been regularly purchasing about two pounds of marijuana each week from Frazier in the neighboring town of Owensboro, Kentucky. The affidavit also reports that Agent Steward had obtained Frazier's telephone records, which revealed that he was in "constant contact with known drug dealers" and that officers doing surveillance of Frazier's Jeffries Street residence saw him coming and going in an expensive vehicle.

After reviewing the five affidavits submitted before the Frazier affidavit, the magistrate judge advised Agent Steward that the affidavits should be revised to include the information that CI-178 had taped two of the controlled buys. Agent Steward made that revision to each of the first five affidavits but inexplicably—and unintentionally—did not supplement the Frazier affidavit. On reviewing the Frazier affidavit, the magistrate, who did not realize that it did not contain the information about the taped buys, instructed Agent Steward to "strengthen" paragraph 17, which cited Sixth Circuit cases in support of the proposition that "a search warrant may be properly issued against a suspected drug dealer's residence despite the lack of direct evidence of criminal activity at the residence." Agent Steward added a citation to *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998) ("in the case of drug dealers, evidence is likely to be found where the dealers live") but made

---

[1] Because this was an impromptu transaction, CI-178 was not able to record it.

no further changes to the affidavit. Hence, the final draft of the Frazier affidavit describes the McGuire and Harris transactions, but does not specify that CI-178 was wearing a wire and recorded them. Apparently unaware that Agent Steward had not made all of the requested changes, the magistrate judge issued a warrant to search Frazier's house, which ultimately resulted in the seizure of marijuana and firearms.

Reserving his right to appeal the district court's denial of his motion to suppress evidence pursuant to FED R. CRIM. P. 11(a)(2), Frazier pled guilty to possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and possessing firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(a). Frazier moved to suppress the evidence seized from his house on the ground that the warrant was not supported by probable cause. The district court initially agreed and, relying exclusively on the information contained in the four corners of the warrant affidavit, held that the warrant could not be saved under the "good faith" exception to the exclusionary rule that was announced in *United States v. Leon*, 468 U.S. 897 (1984). The United States moved to reconsider, arguing that the court should consider facts known by Agent Steward, which did not appear in the affidavit, as evidence of Agent Steward's good faith. After an evidentiary hearing in which Agent Steward testified that he provided to the issuing magistrate the information that CI-178 had taped two drug transactions in which Frazier had participated, the district court denied Frazier's motion to suppress because Agent Steward relied in good faith on a deficient search warrant. Frazier timely appealed.

## II.

The United States argues that we should affirm the district court because the affidavit established that there was probable cause to search Frazier's home. In appeals from a district court's ruling on a motion to suppress evidence, we review the trial court's factual findings for clear error and its legal conclusions de novo. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). A finding of probable cause is a legal conclusion that we review de novo. *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995). The evidence must be viewed in a light most likely to support the decision of the district court. *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001).

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. Const. amend. IV. To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). This conclusion depends on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). The probable cause standard is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life." *Id*. at 231. Because our review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit, *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n.8 (1971); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) *abrogated on other grounds by Gates*, 462 U.S. at 238; *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973), we may not consider in this analysis Agent Steward's testimony that CI-178 recorded the transactions.[2]

---

[2] The United States argues that paragraph two of the affidavit, which says "[s]ince opening this investigation, February 22, 2002, ATF and Union County Sheriff's Department have used Confidential Informants to conduct numerous drug and firearm(s) transactions with approximately 17 people which [sic] have been identified as prominent members of the FRAZIER SYNDICATE," indicates that the CI-178 recorded the two transactions that Frazier was involved in. Because CI-178 actually recorded some of the transactions mentioned in the affidavit, but not others, we decline to draw this inference.

The bulk of the information contained in the Frazier affidavit comes from confidential sources: CW-1 and CI-178. When confronted with hearsay information from a confidential informant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information . . . ." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005), in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration. *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004); *Allen*, 211 F.3d at 976; *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("[i]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required"); *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993). The Frazier affidavit contains no facts supporting the confidential informants' reliability. There are no averments about the reliability of the information provided by the anonymous informants in the past, there are no averments about the length of the relationship between Agent Steward and the confidential informants, and there is no suggestion that Agent Steward disclosed the informants' true identities to the issuing magistrate.

Nor does the affidavit contain evidence that Agent Steward corroborated the information that the informants provided. Agent Steward observed Frazier coming and going from his residence on Jeffries Street in a Lincoln Navigator and a subsequent search of his telephone records revealed that he was "in constant contact with known drug dealers." Viewing the evidence in a light most likely to support the decision of the district court, this information is insufficient to corroborate the confidential informants' statements.

What is more, neither CW-1, CI-178 nor Patrick Black witnessed Frazier dealing drugs from his Jeffries Street residence, the premises specified in the search warrant.[3] There must be "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quotation omitted). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). In support of its argument that there is probable cause to believe that drugs would be found at Frazier's Jeffries Street residence, the United States relies on a series of cases which hold that an informant's observation of drug trafficking outside of the dealer's home can provide probable cause to search the dealer's house. *See United States v. Miggins*, 302 F.3d 384, 383-94 (6th Cir. 2002); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000); *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998); *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996). None of these cases, however, supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home. Where, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence. *See United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985) (the inference that bank robbers tend to conceal evidence in motel rooms, standing alone, is insufficient to support the search of two bank robbers' hotel room). For the foregoing reasons, we conclude that the district court did not err when it concluded that the information contained in the Frazier Affidavit did not support a finding of probable cause to search Frazier's residence.

---

[3]We note that the information provided by Black is not particularly reliable inasmuch as it is based on multiple levels of hearsay.

Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Id.* at 922-23 n.23. "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 922 (internal quotations omitted). *Leon*'s good faith exception does not apply in the following sets of circumstances:  1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable. *Id.* at 923. Whether *Leon*'s good faith exception applies is a legal conclusion that we review de novo. *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998).

*Leon*'s exception is predicated on the idea that the purpose of the exclusionary rule, which is to deter police misconduct, will not be served by excluding evidence seized by an officer acting in good faith. *Id.* at 916. The exclusion of evidence will have no deterrent effect if it does not alter the behavior of individual law enforcement officers or the policies of their departments. *Id.* at 918.

Frazier argues that the second and third exceptions to *Leon*'s good faith rule apply. We will consider in turn whether the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable and whether the issuing magistrate wholly abandoned his judicial role.

### A.      Whether the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable.

At the outset we address Frazier's reliance on *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005) in support of his contention that a court's analysis of whether an officer acted in good faith is confined to evidence contained within the four corners of the warrant affidavit. The defendant in *Laughton* sought to suppress evidence obtained from his home by officers acting pursuant to a search warrant. In denying Laughton's motion to suppress on the ground that the executing officer relied in good faith on a defective search warrant, the district court looked to information known to the officer but not included in the affidavit. *Id.* at 751. We reversed and held that "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Id.* at 752.

Because the Supreme Court has, in the past, looked beyond the four corners of the warrant affidavit in assessing an officer's good faith, we do not read *Laughton* as prohibiting a court in *all* circumstances from considering evidence not included in the affidavit. The *Leon* Court itself held that a court may look beyond the four corners of the affidavit: "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, *all* of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered." *Leon*, 468 U.S. at 923 n.23 (emphasis added). A court considering the fact that the warrant application had previously been rejected would necessarily have to look beyond the four corners of the document (assuming, of course, that the affidavit did not advertise the earlier rejection). The Court also looked beyond the affidavit in

*Massachusetts v. Sheppard*, 468 U.S. 981 (1984). In that case, a detective investigating a homicide sought a warrant to search a suspect's residence for the murder weapon and pieces of the victim's clothing. *Id*. at 984-85. After preparing an affidavit, the detective sought a warrant application form, but, because the local court was closed, was able to locate only a form entitled "Search Warrant– Controlled Substance." *Id*. at 985. The detective delivered the affidavit and application to the magistrate and explained that they needed to be amended to omit the reference to "controlled substance" and to indicate that the warrant application, when signed, would constitute the warrant itself. *Id*. The magistrate, who informed the detective that he would make the necessary changes, authorized the search without making either change. *Id*. at 986. The Supreme Court held that, given the magistrate's assurances, a reasonable officer would have concluded that the warrant validly authorized a search despite the fact that key amendments were never made. *Id*. at 989.[4]

In view of the foregoing precedents, we interpret *Laughton*'s holding as limited to answering the question that this court, sitting en banc, explicitly left open in *Carpenter*: "whether the search could have been saved under the 'good faith exception' on the basis that the officers had other information that was not presented to the issuing magistrate, but that would have established probable cause." 360 F.3d at 597. Indeed, *Laughton* explained that "a decision on the issue [left unanswered in *Carpenter*] can no longer be postponed." 409 F.3d at 751. *Laughton*, as we have already indicated, holds that "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Laughton*, 409 F.3d at 752. That case gives no indication that the officer who applied for the search warrant provided the issuing magistrate with the information omitted from the affidavit. Because Agent Steward told Magistrate Judge Goebel that CI-178 had recorded Frazier's participation in two drug deals—and, indeed, had included and sworn to this information in five related warrant affidavits presented contemporaneously to the magistrate judge—the case at bar is factually distinguishable from *Laughton*.

We refuse to confine our good faith inquiry to those facts that Agent Steward included in the Frazier affidavit because to do so would not serve the purposes of the exclusionary rule, and specifically, would have no deterrent effect on future police misconduct. The issue of whether evidence should be excluded is discrete from the question of whether the Fourth Amendment rights of the party seeking exclusion were violated. *Gates*, 462 U.S. at 223. "As with any remedial device, the [exclusionary] rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. Where the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted." *Arizona v. Evans*, 514 U.S. 1, 11 (1995) (internal quotations and citations omitted). The record in this case does not support the conclusion that Agent Steward's failure to supplement the Frazier affidavit amounts to anything more than a scrivener's error (especially when one considers that Agent Steward properly amended the other five related affidavits). Punishing Agent Stewart for such a ministerial oversight would have no foreseeable deterrent effect on future police misconduct.

In fact, we are unable to envision *any* scenario in which a rule excluding from the *Leon* analysis information known to the officer and revealed to the magistrate would deter police misconduct. *Leon* only comes into play when an officer has a warrant, albeit a defective one. Because a judge's initial probable cause determination is limited to the four corners of the affidavit,

---

[4]We note that this court's decision in *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996), which was cited in *Laughton*, does not preclude a court from looking outside of the affidavit while analyzing an officer's good faith. Though *Weaver* did state that "[i]n determining whether an affidavit is 'bare bones,' the reviewing court is concerned exclusively with the statements contained in the affidavit itself," it announced this rule in the context of its analysis of whether the affidavit itself contained probable cause. *Weaver* did *not* hold that a court is limited to the four corners of the affidavit for the purposes of the *Leon* analysis.

*Hatcher*, 473 F.2d at 324, an officer has no incentive to exclude from the affidavit information that supports a finding of probable cause only to reveal this information to the magistrate by parol. If the affidavit is not sufficient to support a finding of probable cause, the officer is unlikely to get a search warrant, and if the officer does not get a search warrant, he may not rely on *Leon*. Any deterrent—even the exclusionary rule—is wholly unnecessary in the absence of an incentive to engage in undesirable behavior. *See Elkins v. United States*, 364 U.S. 206, 217 (1960) ("[the exclusionary rule's] purpose is to deter—to compel respect for the constitutional guarantee in the only effectively available way—by removing the incentive to disregard it"). Accordingly, we hold that a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate. *See United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("we find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the executing officer] reasonably relied upon the warrant"); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) ("[w]hen assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.") (quotation omitted). *United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996) (looking beyond the four corners of the affidavit in assessing an officer's good faith); *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992) (same).

Considering that CI-178 recorded Frazier's participation in two drug transactions, we conclude that the affidavit was not so lacking in probable cause as to render official belief in its existence unreasonable. The question of whether Agent Steward's reliance on the warrant was objectively reasonable turns on "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Weaver*, 99 F.3d at 1380 (quotation omitted). This requires a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *Carpenter*, 360 F.3d at 595 (quotation omitted). The addition of the fact that CI-178 recorded two of the conversations provides the element missing in the probable cause analysis: the veracity of the informant. *Martin*, 297 F.3d at 1314 ("[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant") (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)). The transactions that CI-178 recorded, in addition to the information included in the affidavit, provide a reliable basis upon which to conclude that Frazier is a drug dealer.

We think as well that the affidavit establishes a sufficiently strong nexus between Frazier's alleged drug dealing and his home. An officer's belief that there is a sufficient nexus between the suspected crime and the place to be searched is unreasonable when evidence in the affidavit connecting the crime to the residence is "so vague as to be conclusory or meaningless." *See Carpenter*, 360 F.3d at 596 (citing *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)). "We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched . . . even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 596 (officer's good faith reliance on a warrant to search a residence was reasonable when the affidavit merely stated that a road connected it to a nearby marijuana field). For example, we held in *Van Shutters*, 163 F.3d at 336, that an officer relied in good faith on a warrant where the affidavit described the residence and the suspect's criminal scheme but connected the place to the illegal activity only by stating that the residence "was available" to the suspect. In *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) we held that an officer reasonably relied on a warrant authorizing the search of a bank safety deposit box where the affidavit underlying the warrant connected the box and the defendant's drug trafficking only by stating that the officer's training and experience led him to believe that evidence would be located there. And in *Savoca*, we held that, in light of a Sixth Circuit case which says that bank robbers often conceal evidence of their crimes in public and private places, an officer's reliance on a warrant to search a hotel room was reasonable when

affidavit underlying the warrant connected the hotel room to a bank robbery only by stating that the robbers were seen in the room on two prior occasions.  761 F.2d at 297-98.

The Frazier affidavit creates at least as strong a connection between the place to be searched and the evidence to be sought as the affidavits at issue in the foregoing cases.  Paragraph nine of the Frazier affidavit states that the Morganfield Heights Housing Authority found drugs in Frazier's former residence on Culver Court shortly after he moved out.  A reasonably well-trained officer could infer that a drug dealer who kept drugs in his former home would also keep drugs in his current home.  Indeed, Agent Steward averred, based on his training and experience, that drug dealers usually continue their trade after moving to a new residence (paragraph 18), and that people who sell drugs often keep drugs and guns in their homes (paragraph 19).  The inference that drugs would be found in Frazier's new residence is all the more reasonable when considered in light of the Sixth Circuit cases cited in the affidavit, which stand for the proposition that, "in the case of drug dealers, evidence is likely to be found where dealers reside."  And we think that Agent Steward's reliance on this proposition was particularly reasonable because the issuing magistrate returned the affidavit with instructions to add citations to additional authority supporting it.  We hold that the Frazier affidavit was not so lacking in probable cause as to render official belief in its existence entirely unreasonable.

### B.      Whether *Leon*'s good faith exception is inapplicable because the issuing magistrate wholly abandoned his judicial role.

Frazier also argues that Agent Steward could not have relied in good faith on the warrant because the issuing magistrate wholly abandoned his judicial role "by not reading the warrant application and basing issuance of the warrant on unsworn testimony."  A "neutral and detached magistrate" must review a search warrant before it can be executed."  *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971).  In determining whether a warrant is supported by probable cause, "the courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police."  *Leon*, 468 U.S. at 914 (quotation omitted).  The defendant carries the burden of proving that the issuing magistrate acted as a rubber stamp.  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 649 (6th Cir. 2003).

Though the issuing magistrate did not notice that Agent Steward failed to comply with his request to specify that CI-178 had recorded two drug transactions, the record does not support Frazier's claim that the magistrate issued the warrant without reading the affidavit.  In fact, we know that the issuing magistrate read the affidavit at least twice.  After Agent Steward resubmitted the affidavit (without including information about CI-178's role in the case), the magistrate reviewed it and returned it with instructions to "strengthen" paragraph 17, which cited Sixth Circuit case law in support of the proposition that a warrant may issue to search a drug dealer's residence despite a lack of direct evidence connecting the drug enterprise to the residence.  Based on his conversation with Agent Steward, the magistrate also asked him to add what became paragraph 18, in which Agent Steward avers that, based on his training, drug dealers continue their trade after moving to a new residence.  Agent Steward testified that after he supplemented paragraphs 17 and 18 and resubmitted the affidavit, the magistrate "looked it over again" and affixed his name to the search warrant.  This evidence demonstrates that the magistrate not only reviewed the affidavit, but did so with a critical eye.

Even less does the record support Frazier's claim that the magistrate abandoned his judicial role by relying on unsworn testimony.  It is true that Agent Steward did not swear in the Frazier affidavit that CI-178 taped two of the drug buys.  He did, however, swear to that fact in the five related affidavits contemporaneously presented to the magistrate judge.  While it was technically improper for the magistrate judge to rely on that testimony for the Frazier warrant, that reliance does not preclude the application of *Leon*'s good faith exception.  "The exclusionary rule is designed to

prevent police, not magistrate, misconduct . . . ." *Rodriguez-Suazo*, 346 F.3d at 649.  Because "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment," any procedural errors committed by the issuing magistrate are irrelevant to the executing officer's good faith in cases where the defendant has failed to show that the magistrate abandoned his judicial role.  *Leon*, 468 U.S. at 916.   Frazier has failed to prove that the issuing magistrate acted as a rubber stamp.

### III.

Alternatively, Frazier asks us to remand his case with instructions for the district court to hold an evidentiary hearing in order to prove that knowing or reckless falsities negating good faith are contained in the affidavit supporting the search of his home.  Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit only if 1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and 2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set aside.  *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997).  Frazier argues that paragraphs 9 and 13 contain averments that are deliberately and recklessly false.  We conclude that neither paragraph contains false information that would entitle Frazier to a *Franks* hearing.

Paragraph 9 says, in its entirety,

On May 1, 2003, ATF Special Agent Kirk Steward was contacted by Morganfield Police Officer Jeff Hart concerning seizure of approximately 20.4 grams of cocaine from the apartment, 759 Culver Court located in the Morganfield Heights Housing Authority in Morganfield, Kentucky, of Chris FRAZIER.  On May 5, 2003 the Morganfield Height[s] Housing Authority evicted FRAZIER from his apartment. Sometime on the morning of May 6, 2003, employees of the Morganfield Heights Housing Authority were cleaning FRAZIER'S apartment in order to get it ready for another tenant when they discovered a white powder substance in a plastic baggie. Morganfield Police and Union County Sheriff Officer's [sic] were dispatched to FRAZIER'S apartment.  Upon seizing the white substance, Union County Sheriff's Deputy Jason Corbitt conducted a narcotic field test of the cocaine.  The test resulted in a positive indication for cocaine.

Frazier argues that he has made a substantial preliminary showing that paragraph 9 contains deliberately or recklessly false averments because it does not accurately state the date that he moved out of his apartment.  Paragraph 9 certainly contains errors.  Agent Steward could not have been told on May 1, 2003, about a May 6, 2003, cocaine seizure.  But the record does not support the conclusion that the falsehoods contained in paragraph 9 are anything more than typographical errors. A defendant cannot demonstrate entitlement to a *Franks* hearing by merely identifying typographical errors in the affidavit.  In any event, no prejudice ensued from any errors that Agent Steward made concerning the date of Frazier's eviction because paragraph 9 makes it clear that he was not living in the Culver Court residence when the drugs were found.

Frazier also takes issue with paragraph 13 of the affidavit, which states that the Kentucky State Police were unable to muster enough officers to search Frazier's home, despite their suspicion that he was a drug dealer.  Frazier argues that he is entitled to a *Franks* hearing to explore the "unlikelihood that Kentucky State Police could not get a search warrant due to 'man power issues and priorities to other investigations.'"  Because Frazier's argument merely speculates that the Kentucky State Police had the manpower to execute the warrant, he has failed to make a substantial preliminary showing that paragraph 13 contains a deliberately or recklessly false averment.  Finding

no basis upon which to remand his case with instructions to hold a *Franks* hearing, we deny the request for remand.

## IV.

Finally, Frazier argues that his "trial counsel's failure to investigate allegedly false statements in the affidavit in support of the search warrant and to reassert the motion for an evidentiary hearing constitute ineffective assistance of counsel." We generally do not rule on ineffective assistance of counsel claims raised for the first time on direct review. *United States v. Garcia-Meza*, 315 F.3d 683, 687 (6th Cir. 2003). An exception to this general rule exists when the record is adequately developed to allow the reviewing court to assess the merits of the appellant's *Strickland* claim. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). This is not such a case.

## V.

For the foregoing reasons, we **AFFIRM** the district court's order denying Frazier's motion to suppress; we **DENY** his request for a remand; and we **DISMISS** without prejudice his claim of ineffective assistance of counsel.