File Name: 06a0398n.06

Filed: June 7, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-5586

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ANDREW PERRY LESTER,

     Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____/

Before:      MARTIN, GUY, and CLAY, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge.  Appellant Andrew Lester was convicted of violating 18 U.S.C. §922(o) for possessing a machine gun with no serial number, and 26 U.S.C. §5861(d) for possessing an unregistered machine gun.  Lester appeals the denial of his motion to suppress evidence seized from his home pursuant to a search warrant.  He also appeals the district court's refusal to give his proposed jury instruction with respect to a mens rea requirement regarding the crime of possession of an unregistered machine gun.  For the following reasons, we REVERSE the denial of Lester's motion to suppress.

I.

     Lester was indicted for the two charges on September 8, 2004, in the United States District Court for the Western District of Kentucky.  The firearm that was the subject of both counts of the

indictment was seized in a search of Lester's home, executed pursuant to a search warrant on

November 6, 2002. Lester filed a motion to suppress the evidence that was denied by the district

court.

The search warrant authorizing a search of Lester's home was issued by a federal magistrate

judge based on an affidavit sworn out by Special Agent Marcus Anderson of the federal Drug

Enforcement Agency on November 5, 2002. Anderson's affidavit claimed that the following relevant

facts supported the issuance of the warrant:

(1)     Andrew Lester was arrested for cultivating marijuana in Kentucky in 1993, and had been involved in a "drug trafficking organization," with other family members, including his brother Richard Lester.[1]   Richard Lester had also been arrested for a number of various criminal offenses.

(2)     In 1999, a woman arrested for trafficking marijuana informed police that Richard Lester was her supplier.

(3)     A confidential informant told officers that since 1995, Richard Lester had led a "very large marijuana organization in Kentucky."

(4)     In October 2002, a man named Richard Prowell was arrested for possession of cocaine and marijuana in Caldwell County, Kentucky. Prowell informed police that he obtained the drugs from Richard Lester, that he had known the Lester brothers for 20 years, and that he had gone to Andrew Lester's home to ask Andrew for Richard Lester's phone number. Andrew had refused to give Prowell the phone number, although Prowell received a phone call from Richard Lester a few days later.

(5)     Prowell provided further assistance to police by paging Richard Lester on October 24, 2002, and speaking on the telephone to Richard when he responded to the page. Prowell told Richard Lester that he had been arrested on drug charges. Richard asked Prowell about any ongoing drug investigation, and whether officers had found "the stash." He also instructed Prowell to take drug money to Andrew Lester's house, where an individual would come to pick it up. Richard also told Prowell that he was headed toward Kentucky with a "bunch,"

---

[1] The source of information regarding Andrew Lester's involvement in a drug trafficking organization is not mentioned, and this allegation is otherwise unsubstantiated. See JA at 23, ¶9.

meaning a load of drugs.

Anderson believed that these facts created probable cause to search *Andrew* Lester's "residence, any

and all outbuildings, and vehicles registered to Andrew Perry Lester."

The affidavit also incorporated by reference an attachment that listed potential evidence of

violations of federal drug laws that was likely to be found at Andrew Lester's residence.  The list of

potential evidence included bank statements, cancelled checks, deposit slips, safety deposit records,

tax returns, records of asset acquisition, photographs, film, travel documents, utility bills, credit card

statements, all mail, currency, and various other personal documents and possessions, as well as

firearms or drug paraphernalia.  The magistrate agreed that the facts alleged in the affidavit amounted

to probable cause to issue a warrant to search Andrew Lester's house by signing the bottom of the

form document that Anderson had used to apply for the warrant.

The following day, November 6, 2002, federal and local officials executed a search of

Lester's residence pursuant to the warrant.  A fully automatic Sten machine gun was found in a blue

gym bag in a closet inside the house.  The search of the defendant's house and vehicle, as well as

another consensual search of a second property owned by the defendant, yielded twenty-six other

guns.  It was later discovered that the machine gun did not have a serial number and was unregistered,

which led to Andrew Lester's subsequent indictment.

II.

When reviewing a district court's denial of a motion to suppress, this Court applies a two-part

standard, reviewing factual findings for clear error and legal conclusions *de novo*.  *United States v.*

*Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  "A finding of probable cause is a legal conclusion that

we review de novo." *Id.* The facts must be construed "in a light most likely to support the decision of the district court." *Id.* In this case, there is little dispute over the facts, as the district court and the parties accepted that the existence of probable cause turned on the facts set forth in Anderson's affidavit. Our review is thus focused on the legal question of whether Anderson's affidavit created sufficient probable cause to justify a search of the defendant's entire residence.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend IV. For a search warrant to be supported by probable cause, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citations omitted). The circumstances presented in the affidavit "must indicate why evidence of illegal activity will be found 'in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

The affidavit presented by Anderson to the magistrate consisted in large part of irrelevant facts that provided no indication whatsoever of illegal activity at Andrew Lester's residence. The statements that Andrew Lester was arrested (not, as far as we know, convicted or otherwise incriminated) for selling marijuana eleven years earlier, or that his brother had been involved in selling drugs in the past are obviously irrelevant to any determination that criminal activity may have been likely to occur at Andrew Lester's residence at the time the warrant was issued. The claim that Andrew Lester was somehow involved in drug trafficking with his brother is unsubstantiated, does not provide the source of any information that could support it, and fails to specify any time frame for his alleged involvement. *See United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (requiring that "[t]he affidavit presented must contain adequate supporting facts about the underlying

circumstances to show that probable cause exists for the issuance of the warrant").

The district court considered it relevant to the probable cause inquiry that "two named informants and a confidential informant had bought drugs from Mr. Richard Lester in 1999, October 2002, and February 2002, respectively." D. Ct. Op., JA at 29. These factual assertions are entirely devoid of any nexus to Andrew Lester or his property, and do nothing to support the inference "that Mr. Lester's home was the base of operations for his brother's drug dealing operations." Id. at 30.

The district court also found it significant that the informant Prowell sought Richard Lester's phone number from Andrew Lester, and although Andrew Lester refused to provide it, Richard Lester contacted Prowell a couple of days later. Although Prowell identifies this as the point in time where he began receiving drugs from Richard Lester, there is no indication that Andrew Lester knew that this was why Prowell was seeking to speak with his brother. Even assuming that Prowell's allegations indicate that Andrew Lester passed the message on to Richard Lester (despite the lack of any specific indication that this occurred) there is no suggestion that Andrew was somehow involved in the discussions, particularly given Powell's statement that he was rebuffed by Andrew. It is entirely possible and perhaps likely, given Prowell's account, that Andrew Lester had no knowledge of the subject matter of Prowell's inquiry. Prowell's story about this exchange is thus also of minimum relevance to a determination that criminal activity may have been likely at Andrew Lester's house.

Richard Lester's statement that he was bringing a "bunch" of drugs to Kentucky also does not create any nexus to his brother's house as a base of drug dealing operations. The magistrate and the district court incorrectly found this statement to support an inference that the shipment was likely

going to be brought to Andrew Lester's residence. Clearly the state of Kentucky is a tremendously broader location than the house of one family member. Moreover, given Prowell's activity and statements, and Anderson's suspicions of Richard Lester, the government believed Richard had connections throughout the state through whom he distributed drugs other than his brother.

The only fact that could potentially create a nexus to Andrew Lester's residence is Richard Lester's instruction to Prowell to bring drug money to Andrew Lester's house to be picked up by an unnamed individual. Although this fact did not necessarily indicate any involvement by Andrew Lester in drug trafficking, it did create some connection to his property. As the government points out, it is this connection to the property that is relevant for the Fourth Amendment inquiry. *See Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) ("The specificity required by the Fourth Amendment is *not* as to the person against whom the evidence is to be used but rather as to the place to be searched and the thing to be seized." (emphasis in original)). Richard Lester's instruction to Prowell to bring drug money to Andrew Lester's house may thus have created probable cause of illegal activity in connection with the transfer.

This is a more limited basis for a search than the unsupported claim that the property was likely a base of operations for a drug trafficking organization. The only information that could have supported a search warrant here was confined to the transfer of drug money. Such a transfer would have occurred at a single, rather brief time period. The government's contention on appeal that there was "ongoing activity" is based on unsupportable inferences that Andrew Lester was shown to be involved in Richard Lester's drug activity. Consequently, probable cause only existed here to support a warrant that was aimed at intercepting or investigating the alleged transfer of drug money at

Andrew Lester's property.

We are required to consider the totality of the circumstances when reviewing the denial of a motion to suppress. *Frazier*, 423 F.3d at 531. The facts in the affidavit here other than the potential transfer of drug money were irrelevant and contributed nothing to the probable cause determination, and the discussion of the transfer of drug money by itself was unrelated to any ongoing criminal conduct at Andrew Lester's residence. Given our analysis of the various assertions in the affidavit, we conclude that there was not probable cause of *ongoing* illegal activity at Andrew Lester's house. Any nexus to Andrew Lester's property was solely limited to the transfer of drug money between Prowell and another individual. The scope of the warrant issued here clearly went well beyond this limitation because it was not focused on the narrow criminal activity that might have been indicated at the Defendant's residence. The statements in Anderson's affidavit did not justify a search of Andrew Lester's entire house with the breadth provided for in the warrant. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (stating that the Warrant Clause of the Fourth Amendment "limit[s] the authorization to search to the specific areas and things for which there is probable cause to search.").

Instead of limiting the scope of the warrant to target the transfer of drug money, which it may have had reason to suspect would occur at Andrew Lester's residence, the government sought and the magistrate approved a warrant to search the entire residence and outbuildings. The attachment to Anderson's affidavit listing all types of personal documents and possessions makes clear that the government sought approval of a search that was much more sweeping than an attempt to investigate the transfer of drug money at Andrew Lester's property. Although the evidence listed in the

attachment may have fallen within the scope of a permissible search if there was probable cause to suspect Andrew Lester's involvement in an ongoing drug conspiracy, without such a showing, a search this broad was impermissible here.[2] The district court thus erred in concluding that the warrant and affidavit contained adequate probable cause to search Andrew Lester's property.

The more limited probable cause that existed here – that a transfer of drug money was likely to occur at Andrew Lester's house – also could not support the warrant and search in this case given the manner and timing of their execution. Lester argued at the suppression hearing and again on appeal that by the time the police obtained and executed the warrant, any probable cause they may have had was stale due to the passage of time since Richard Lester's phone call. The district court rejected this argument, reasoning that since the police had reason to suspect Andrew Lester of ongoing involvement in a drug trafficking conspiracy, "the things to be seized - drugs and drug money - would be there probably for some time." JA at 29. Based on our conclusion that there was not, in fact, probable cause to suspect Andrew Lester of involvement in an ongoing drug conspiracy, we conduct our staleness analysis differently.

In determining whether a probable cause finding is stale, this Court considers "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any

---

[2] Our determination is not, as the dissent suggests, that the search was overbroad *because* of the items listed in the attachment. Rather, the breadth of the items listed simply underscores the fact that the scope of the warrant went beyond "the places and things for which there [was] probable cause to search." *Garrison*, 480 U.S. at 84. Even if these items are, as the dissent claims, "the usual laundry list of items generally found in places where drugs are being sold," there was no probable cause to believe drugs were being sold at Andrew Lester's house. This lengthy, detailed list of personal items only further illustrates that the search was not targeted at intercepting the transfer of drug money.

corroboration of the older and more recent information." *United States v. Helton*, 314 F.3d 812, 822

(6th Cir. 2003). In this case the only criminal conduct there was probable cause to suspect occurring

at Andrew Lester's property was the transfer of drug money. Such a transfer would have been brief

in nature, given the evidence that the government and the magistrate were aware of at the time.

Moreover, if the government had wanted to focus on this particular act, rather than seeking the more

general warrant it eventually obtained, it could have at least attempted to arrange through cooperation

with Prowell to set a specific time when the transfer might occur. It is especially relevant that the

transfer, as opposed to storage, of drug money or other incriminating possessions is something that

the parties would have likely sought to effectuate quickly. Given the information the police had

here, they had no idea of when the alleged transfer of drug money might occur, and did not try to find

out.[3] Based on the information provided in the affidavit, there was no reason to believe that evidence

of criminal activity related to the transfer of drug money would be found almost two weeks after the

phone call from Richard Lester about the transfer. This two week time period is not an

extraordinarily long amount of time on its own, and would not as a matter of course render a probable

cause determination stale. Under the factors this Court has used to determine staleness, however,

---

[3] Since the individual who was supposed to be bringing the money to the house, Prowell, was cooperating with police, they were well-equipped to focus on the timing of any exchange of money. Even if arranging the transfer was dangerous or impossible, they would certainly have known that the transfer was *not* specifically planned for the time that they arrived at the property. The dissent finds the passage of time here acceptable based on its conclusion that "[t]he police had probable cause to believe that Richard was transporting drugs from out of state to his brother's house and that their informant was to take money there for the purchase of drugs." This conclusion is inconsistent with the record, as there is absolutely no indication that drugs were being brought to Andrew Lester's house, or that the informant would be purchasing or handling drugs.

with regard to the specific probable cause that potentially existed in this case, two weeks was a significant amount of time.

Were the evidence of an ongoing drug conspiracy at all compelling, the staleness inquiry would be quite different. Thus, while a two week time frame might not render a probable cause finding stale in many situations, in this context it is sufficient to undermine the existence of probable cause. Not only were the search and warrant broader than the limited probable cause that existed here, but that limited probable cause had become stale and largely irrelevant by the time the warrant issued and the search was conducted.

## III.

Even though the warrant here was not based on adequate probable cause, and evidence seized pursuant to a search that violates the Fourth Amendment is generally excluded at trial, the evidence can be admitted under the exception to the exclusionary rule established by the Supreme Court in *United States v. Leon.* 468 U.S. 897 (1984). *Leon* modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905.

The *Leon* exception is based on the rationale that because the exclusionary rule is intended to deter police misconduct, it should not be applied in instances where a constitutional violation arose out of an officer's reliance on a magistrate's approval of a warrant that the officer believed to be supported by probable cause. *See Frazier*, 423 F.3d at 533. Accordingly, the Supreme Court noted four circumstances where *Leon* would not apply and the evidence would be excluded:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or

is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The relevant exception to *Leon* in this case is the third — that the officers could not have reasonably believed, based on the information in the affidavit, that probable cause existed to search Andrew Lester's residence. The application of the *Leon* good-faith exception is a legal conclusion that we review *de novo*. *Frazier*, 423 F.3d at 533.

We find that no reasonable officer could have believed there to be probable cause to support the search that occurred here. Consequently, the *Leon* good-faith exception does not apply in this case, and the evidence seized in the search of Andrew Lester's property should have been suppressed. No reasonable officer would have objectively believed that there was probable cause to search the defendant's residence based on a ten year old drug related arrest, unsubstantiated statements about his involvement in drug trafficking, and allegations that related only to his brother and not to him. It becomes a closer question when considering the statement in the affidavit regarding the transfer of drug money at Andrew Lester's house. Because any such transfer between individuals who were not alleged to have resided at the house would likely be fleeting in nature and not involve the ongoing storage of evidence at the house, however, this claim in the affidavit does not support Anderson's good faith here.

The dissent takes issue with our *Leon* analysis by claiming that we should not substitute our "guess" as to probable cause for that of the police officer executing the warrant. Although we are

hesitant to acknowledge that the requirements of the Fourth Amendment are satisfied by a guessing game as to probable cause, at a minimum *Leon* requires that any such "guess" at least be objectively reasonable. "Guessing" that a transfer of drug money would occur two weeks after the police learned of it without any additional information specifying a time or date (particularly considering the police themselves had access to any such information because one of the parties to the transfer was their informant) is not objectively reasonable. "Guessing" that drugs would be arriving at Andrew Lester's house on the basis of information that his brother was sending drugs to some place in Kentucky is similarly unreasonable. Guesses of this nature, which involve the execution of a search with no meaningful connection to a showing of probable cause that anyone would find reasonable, cannot satisfy the objective reasonableness required to meet the *Leon* good faith exception.

Rather than investigating the house in a good faith search for evidence of this transfer, it seems more likely that Anderson took advantage of the warrant to effect a general search. This conclusion is supported by a comparison of the fleeting criminal activity that the police had reason to suspect with the breadth and depth of the search that was authorized by the warrant and executed by the government, reaching the entirety of Andrew Lester's property and his private personal documents and possessions. It was unreasonable to think there was probable cause to suspect Andrew Lester of ongoing involvement in a drug conspiracy or that his residence was being used in a drug conspiracy. The warrant that issued and the search that occurred cannot be said to have been reasonably aimed at the narrower search that might have been supported by probable cause. Consequently, the *Leon* exception does not apply here, and the evidence seized from Andrew

Lester's residence should have been suppressed.

IV.

For the foregoing reasons, we REVERSE the district court's denial of Lester's motion to suppress, and REMAND for proceedings consistent with this opinion. Given this decision, we need not reach the issue of the district court's refusal to instruct the jury with regards to a mens rea requirement for the crime of possession of an unregistered machine gun.

**RALPH B. GUY, JR., Circuit Judge, dissenting.** I agree with the court that the facts in this case are straightforward and not in dispute. I disagree with the court's interpretation of the facts and the lack of significance the court attaches to certain of the facts. I think the district judge was correct in denying the suppression motion, and I would affirm on the basis of his written opinion. I write additionally only to point out where I feel the court strays from the standards that must be employed when reviewing the denial of a motion to suppress based on lack of probable cause for the issuance of a search warrant.

In his motion to suppress as well as in his brief before this court, the defendant spent a lot of time arguing that there was nothing in the search warrant affidavit tying the defendant to a crime. This, of course, is irrelevant because, as the court concedes, the Fourth Amendment inquiry concerns property, not people. It matters not whether Andrew Lester was involved in his brother's drug activity or even knew of it.

That does not mean, however, that the fact that the police informant was told to take drug purchase money to Andrew's house is without significance in determining whether the officers executing the warrant reasonably relied on its validity. Had the informant been told by Richard Lester to take the money to a motel room, for example, there would be no reason to think that whatever illegal activity was going on there was other than temporary or transitory, and this would have a bearing on the issue of staleness. The police had probable cause to believe that Richard was transporting drugs

from out of state to his brother's house and that their informant was to take money there for the purchase of drugs. There was nothing in the conversation between Richard Lester and the informant indicating that the purchase had to be immediate. In fact, since Richard was coming from out of state, the logical inference is that there would be a time lapse before the drugs would arrive at Andrew's house.

The record does not reveal precisely why the police waited over a week to seek a search warrant, but since there was no indication that time was of the essence in the purchase of the drugs, it was reasonable for the police to let some time go by in an effort to increase the likelihood that Richard would have arrived from out of state with the drugs.

I address this issue of staleness first, because the court concedes that "Richard Lester's instruction to Prowell to bring drug money to Andrew Lester's house may thus have created probable cause of illegal activity in connection with the transfer." Having made this concession, the court, in addition to finding staleness, goes on to find that the warrant was overly broad insofar as the objects listed to be the subject of the search.

My response to this concern is that if this warrant was overbroad, then almost every drug search warrant that comes before this court for review also must be overbroad because this warrant does little more than set forth the usual laundry list of items generally found in places where drugs are being sold. This is particularly true where the place of sale is a private home to which the seller has a connection. Certainly, firearms

are universally listed as items to be searched for when a drug search warrant is prepared.

Finally, the court rejects the *Leon* good faith argument solely on the basis of its conclusion that "no reasonable officer could have believed there to be probable cause to support the search that occurred here." Remembering that there is no allegation of false information or overstating by the police officer, nor is there any allegation that the magistrate served "as a rubber stamp for police activities," we are left with the proposition that a federal magistrate did find probable cause. This, of course, is a legal conclusion we review *de novo*, but nonetheless it is of significance when looking at this through the eyes of the police officer executing the warrant. There is no suggestion that the magistrate asked for more information or in any way questioned the adequacy of the affidavit that supported the warrant. Since, as stated earlier, the court does find that there was probable cause, albeit stale, to believe money would be exchanged for drugs at the location to be searched, how can the "affidavit [be] so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). If anyone is entitled to "guess" at when the warrant is best served, that decision, under these circumstances, is best left to the officers executing the warrant. The court supports its "guess" as to staleness solely on the basis of the passage of 13-days time between the police learning of drugs coming in from out of state and the execution of the warrant.

Although the review by our court of a finding of probable cause is *de novo*, such

review must be conducted within the well-defined guidelines set down by the Supreme Court, which are bottomed on encouraging the police to seek warrants, not being hyper-technical in our interpretation of the warrants, and giving the officer the benefit of the doubt in a close case. The opinion of the court in this case ignores all of those parameters.

Since I would affirm the district court's decision to deny the motion to suppress, it is necessary to address the defendant's second argument on appeal that the district court erred in refusing to give his proposed jury instruction with respect to a *mens rea* requirement regarding the crime of possession of an unregistered machine gun. The defendant is simply wrong in this contention.

This court will reverse a district court for its refusal to give a requested instruction "only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). Defendant specifically faults the district court for not instructing the jury that the government must prove that the defendant knew the machine gun was unregistered.

Adopting a *mens rea* requirement, the Supreme Court in *Staples v. United States*, 511 U.S. 600, 602 (1994), held that 26 U.S.C. § 5861(d) requires proof that the defendant knew that the firearm he possessed "had the characteristics that brought it within the

statutory definition of a machine gun." The Court reiterated its earlier holding, however,

that the government is *not* required to prove that the defendant also knew that the firearm

was unregistered. *Id.* at 608-09 (citing *United States v. Freed*, 401 U.S. 601, 609 (1971)).

Because the defendant's proposed instruction did not correctly state the law and the

district court's instructions did, the district court did not abuse its discretion in refusing to

give the requested instruction.