NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0392n.06

No. 22-3356

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 22, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| MONTEL WESTLEY, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE: MOORE, CLAY, and MATHIS, Circuit Judges.**

CLAY, J., delivered the opinion of the court as to Parts I and II.A.1, in which MOORE and MATHIS, JJ., joined, and announced the judgment, in which MOORE and MATHIS, JJ., also joined. MOORE, J. (pp. 23–30), delivered the opinion of court, in which MATHIS, J., joined, as to the issues addressed in her opinion.

**CLAY, Circuit Judge**. Defendant Montel Westley appeals the district court's denial of his motion to suppress and motion for a new trial. After his motion to suppress was denied, a jury convicted Westley on five counts of possession with intent to distribute various controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The district court sentenced Westley to 55 months' incarceration for the drug convictions, consecutive to 60 months for his firearm conviction. Westley alleges that the three warrants issued in the case were not supported by probable cause, and that the evidence obtained using these warrants should have been suppressed. For the reasons set forth below, we **AFFIRM** the district court's judgment; however, we note that the concurrence constitutes the majority as to the issues it discusses.

## I. BACKGROUND

### Factual Background

In June 2020, the Cuyahoga County sheriff's department initiated a drug investigation of Montel Westley based on information received from a confidential informant. The officers believed Westley resided at 10701 Linnet Avenue, Cleveland, Ohio ("Linnet Residence"), and on June 24, 2020, searched the trash of the Linnet Residence, finding "numerous clear plastic bags and a broken kitchen plate, with white and brown residue.[1] (Linnet Residence Warrant, R. 27-1, Page ID # 151). In furtherance of their investigation, the officers organized a controlled buy of cocaine and ecstasy from Westley, with the use of a confidential informant outfitted with live audio and video feed technology. The officers observed Westley leave from the Linnet Residence to the location where the sale would occur, and Westley purportedly made no stops in between the two locations. After the sale, the confidential informant provided the officer with the cocaine and ecstasy purchased from Westley, which was later sent to the Cuyahoga County Medical Examiner's Office and tested positive for cocaine. Cuyahoga County law enforcement then applied for a search warrant for the Linnet Residence. The warrant application included an affidavit from an officer stating that probable cause to search the residence existed based on: the controlled buy, evidence found in the trash at the residence, a law enforcement data base matching Westley with the Linnet Address, the officer's experience that drug dealers store weapons and drugs in a residence near the site of their sale, Westley's criminal history, and an active warrant

---

[1] One of the plastic bags tested positive for the presence of cocaine; however, these results were not included in the officer's application for the Linnet Residence search warrant.

for Westley's arrest with a different police department. A Cuyahoga County judge issued a search warrant based on this application for the Linnet Residence ("Linnet Residence Warrant).

On June 30, 2020, the officers executed the search warrant on the Linnet Residence and found court documents belonging to Westley; 0.5 grams of cocaine; 0.5 grams of methamphetamine; two digital scales, which tested positive for cocaine residue; and other packaging material commonly associated with drug distribution. Further, officers seized several firearms[2] and ammunition while conducting the search. Subsequent to this search, the government filed a complaint and application for a federal arrest warrant in the Northern District of Ohio on August 5, 2020, charging Westley with possession with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. § 841 (a)(1), and knowingly and intentionally possessing a firearm by a person prohibited from doing so in violation of 18 U.S.C. § 922 (g).[3] Westley was not present during the Linnet Residence search, and his location was unknown at the time the complaint was filed. The federal arrest warrant for Westley was issued ("Arrest Warrant"). Three weeks later, on August 24, 2020, Westley was arrested in a hotel room in Cleveland, Ohio. Officers arrived at Westley's hotel room, and upon request, Westley came to the door and exited the hotel room. Officers secured the room and applied for a search warrant for Westley's hotel room averring that probable cause existed based on the June 30, 2020, search, plain view observations officers made during Westley's arrest, Westley's criminal history, and his two other outstanding arrest warrants from different police departments. A magistrate judge for the Northern District of Ohio approved the hotel room search warrant ("Hotel Warrant"). Police executed the

---

[2] The firearms seized were determined not to have been manufactured in the state of Ohio, and thus were a product of interstate and/or foreign commerce.

[3] The firearm charge in violation of 18 U.S.C. § 922 (g) was based on Defendant being prohibited from possessing a firearm, which was later found to be a mistake. Thus, no indictment was pursued as to that charge.

warrant the same day Westley was arrested, and the officers recovered various controlled substances, including, approximately: 8 grams of fentanyl mixture, 9.2 grams of cocaine base, 13.38 grams of cocaine, 10.6 grams of pills containing fentanyl, and 49 unit doses of LSD in the hotel room. Also, agents located a loaded firearm under the bed in the hotel room, and various tools commonly used for the drug trade.

## Procedural History

On September 3, 2020, Defendant Westley was indicted on eight federal drug and firearm counts related to the June 30, 2020, and August 24, 2020, searches. Counts 1 and 2 charged Westley with possession with intent to distribute cocaine and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), resulting from the search of the Linnet Residence on June 30, 2020. Counts 3 through 7 charged Westley with possession with intent to distribute: a mixture of fentanyl, cocaine, and methamphetamine; cocaine base; cocaine; fentanyl; and LSD; in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), resulting from the search of the hotel on August 24, 2020. Count 8 charged Westley with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

On February 10, 2021, Westley moved to suppress evidence seized from the Linnet Residence search and filed a corrected copy of this motion on February 23, 2021, arguing that the warrant application failed to establish probable cause. Westley filed a supplemental suppression motion on April 19, 2021 claiming that the Arrest Warrant and the Hotel Warrant were fruit of a poisonous tree. The government opposed each motion.

At a status hearing, the district court questioned whether a suppression hearing was warranted, based on the issues Westley raised in his motions. The district court found that the suppression motions would, necessarily, be decided by considering the four corners of the affidavit

and no hearing was necessary. After the district court decided that it would resolve Westley's suppression motion without a hearing, the parties submitted supplemental suppression briefing.

Because the basis of Westley's suppression motion was based on the validity of the Linnet Residence Warrant, the district court focused on the Linnet Residence Warrant in its order and found that the warrant application provided by the Cuyahoga County sheriff's department "showed a 'fair probability' that Westley was engaged in drug trafficking." (Suppression Order, R. 38, Page ID # 230, 231 (quoting *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008)). The district court briefly addressed the Arrest and Hotel Warrants, finding that: "Law enforcement's controlled-buy observations and the recovered Linnet Avenue drug and firearm evidence were sufficient to establish probable cause for Westley's arrest" and "[w]hile arresting Westley, officers observed suspected drugs in plain view in his hotel room, justifying the search warrant." (*Id.*, Page ID # 232).

After the district court denied Westley's suppression motion, the government notified the court on July 16, 2021, that a statement made in its affidavit for its Complaint, Arrest and Hotel Warrant applications, and response to Westley's motion to suppress was inaccurate. Specifically, the government, had previously stated that "detectives [ ] discovered discharge papers for a gunshot wound addressed to Montel Westley in the trash [of the Linnet Residence]." (Supplemental Information, R. 40, Page ID # 236). However, upon review of the evidence, the government realized that the name on the discharge papers was "Orlando" Westley, not "Montel" Westley, with no reference to any residence. (*Id.*). The discharge paperwork was not used in the Linnet Residence warrant application. Further, the district court's review of the adequacy of the Linnet Residence Warrant looked only to the affidavit within its application, and thus the discharge paperwork was not included as part of the district court's reasoning in denying Westley's motion

to suppress. Westley filed a response to the government's supplemental information arguing that the incorrect statement was indicative of the truthfulness of all the government's statements, and that the entirety of the evidence used to justify the Linnet Residence Warrant should be called into question. The district court then entered an order finding that the misstatement was immaterial because "the discharge papers were not mentioned in the affidavit for the Linnet Avenue search warrant . . . . [and]were not relevant to the suppression order addressing the affidavits sufficient showing of probable cause supporting the Linnet Avenue search." (Docket Entry, July 27, 2021).

Following the district court's order, Westley filed a motion for reconsideration, arguing that: (1) he was entitled to a *Franks* hearing based on the government's misrepresentation, *see Franks v. Delaware*, 438 U.S. 154 (1978), (2) the Linnet Residence Warrant application did not establish probable cause, and (3) law enforcement's seizure of the firearms found at the Linnet Residence violated *Arizona v. Hicks,* 480 U.S. 321 (1987). The district court found that Westley's reconsideration motion "[fell] woefully short of the *Franks* hearing standard" because Westley failed to justify why any statement in the affidavit used to support the Linnet Residence Warrant was false. (Reconsideration Order, R. 46, Page ID # 282). The district court again found that probable cause was established in the Linnet Residence Warrant application, and noted that Westley's argument that the Linnet Residence was not where he resides and that the evidence seized did not belong to him, were appropriate defenses at trial, but did not show that the warrant was unlawfully obtained. Thus, the district court found that the evidence was "sufficient to tie the Linnet Avenue residence to Westley's drug trafficking activity," regardless of whether Westley lived there. (*Id.*). Finally, the district court found *Hicks* distinguishable, because *Hicks* involved a warrantless search whereas, in this case, the officer obtained a warrant for the Linnet Residence and the warrant included firearms that may be in the residence. *See Hicks*, 480 U.S. at 325.

On August 16, 2021, prior to trial, Westley filed a *motion in limine*. Westley requested that the district court bar "the government from showing that the arrest made of defendant was lawful" and permit Westley to "object to the admission of the items seized" to ensure that the jury was not left with the impression that "the government's evidence was legally and lawfully acquired." On the first day of trial, August 23, 2021, the district court orally denied the *motion in limine* on the basis that the issues had already been briefed and decided. The case proceeded to jury trial.

On August 24, 2021, a jury convicted Defendant Westley on six counts: Counts 3 through 7 for possession with intent to distribute: a mixture of fentanyl, cocaine, and methamphetamine; cocaine base; cocaine; fentanyl; and LSD; in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) resulting from the search of the hotel on August 24, 2020; and Count 8 for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The jury acquitted Westley on Counts 1 and 2 for possession with intent to distribute cocaine and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) resulting from the search of the Linnet Residence on June 30, 2020.

Westley then filed a motion for a new trial or judgment of acquittal, arguing that: (1) the Linnet Residence Warrant was not supported by probable cause, (2) the Arrest Warrant was deficient because the application mischaracterized the hospital discharge papers, and (3) government counsel falsely asserted in its closing statement that law enforcement's entry into Westley's hotel room was lawfully based on a security sweep. The district court denied Westley's motion. The district court found that the controlled buy with the observation of Westley leaving the residence to conduct the sale and the drug residue found in the trash provided probable cause for the Linnet Residence Warrant. As to the Arrest Warrant, the district court found that "[t]he

search warrant affidavit provided sufficient probable cause to arrest Defendant Westley even without the statement about hospital discharge papers." (New Trial Order, R. 62, Page ID # 481). The district court reasoned that the evidence of "a bag with drug residue found in the trash pull; a controlled buy involving Defendant Westley; drugs, guns, and packaging materials found during the Linnet Avenue search; and papers with Defendant Westley's name in a nightstand that also held drugs" was sufficient to justify the Arrest Warrant. (*Id.*) Additionally, the district court found that Westley was heard on the issue because Defense counsel directly examined, in front of the jury, the officer responsible for including the misstatement in the Arrest Warrant's affidavit. As to Westley's argument that the government improperly described his arrest in its closing argument, the district court found that regardless of Westley's lack of objection during trial, "even if this amounts to an improper argument, it is not sufficient to justify a new trial." (New Trial Order, R. 62, Page ID # 481–82). In sum, the district court denied Westley's motion for judgment of acquittal or for a new trial, "because the government presented sufficient evidence for a rational juror to find each element of the convicted offenses beyond a reasonable doubt." (New Trial Order, R. 62, Page ID # 482).

On April 4, 2021, the district court sentenced Westley to 55 months' incarceration on counts 3 through 7, consecutive to 60 months on count 8. On April 19, 2022, Westley timely filed his notice of appeal.

## II. DISCUSSION

### A. Motion to Suppress

This Court reviews a district court's decision on a suppression motion for clear error as to factual findings and de novo as to conclusions of law. *United States v. Master*, 614 F.3d 236, 238 (6th Cir. 2010) (citing *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005)). "A factual

finding is clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008) (citation and quotation omitted). The Court views the evidence in the light most likely to support the district court's decision. *United States v. Shamaeizadeh*, 80 F. 3d 1131, 1135 (6th Cir. 1996). The Court reviews a "district court's denial of a *Franks* hearing under the same standard as for the denial of a motion to suppress: the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo." *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001).

The Constitution's Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States*, 364 U.S. 206 (1960)). "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). When determining whether an affidavit establishes probable cause, the Court looks only to the "four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

*1. Evidentiary Hearing*

Westley argued before the district court that it erred in denying his request for an evidentiary hearing. Although it is not clear if Westley continues to make the same argument on appeal, in arguing that the motion to suppress was erroneously denied, he references the district court's failure to provide a hearing. We find no error.

If a defendant makes a substantial showing that an affiant lied in an affidavit for a search warrant, then the defendant is entitled to an evidentiary hearing to determine whether, absent falsehood, probable cause exists to sustain the warrant. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). To qualify for a *Franks* hearing, a defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Id.* "[N]o hearing is required" when the "material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* at 171–172. In this case, we find that the district court properly denied Westley a *Franks* hearing.

On appeal, Westley points to the misstatement the government made in its affidavit for its Complaint, Arrest and Hotel Warrant application, and its response to Westley's motion to suppress. The government falsely stated that during a trash pull at the Linnet Residence, officers found discharge papers addressed to Montel Westley; however, the papers had no identifying address and were addressed to Orlando Westley. Westley argues that due to this misstatement a hearing was required and the Linnet Residence Warrant, Arrest Warrant, and Hotel Warrant should have been invalidated.

However, importantly, the misstatement related to the discharge papers was not included in the Linnet Residence Warrant's affidavit, and Westley fails to point to any specific falsehood in that affidavit. Because the district court looks only to the "four corners of the affidavit" in reviewing whether probable cause was established by the affidavit, the government's inclusion of the statement in its response to the motion to suppress is irrelevant. *See Brooks*, 594 F.3d at 492.

Accordingly, because Westley did not identify a false statement in the Linnet Residence Warrant's application, a *Franks* hearing was not required. *See Franks*, 438 U.S. at 155–56.

Regarding the Hotel Warrant and Arrest Warrant, Westley failed to establish that the affiant included a "false statement" in the affidavit, either "knowingly or intentionally, or with reckless disregard for the truth." *Id.* at 155–156. Westley's briefing did not argue any knowledge or ill intent by the government. Further, Westley was given the opportunity to question the affiant who wrote the misstatement in the affidavits for the warrants but failed to question the affiant on the reason for the misstatement. The only line of questioning offered by Westley centered on the fact that the statement was false, which is not in dispute. Further, Westley has not established that the "false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. Accordingly, Westley failed to make the preliminary showing required to trigger an evidentiary *Franks* hearing, and the district court properly denied Westley's request.

*2. Probable Cause*

On appeal, Westley focuses on the lack of probable cause in the officer's application for the Linnet Residence Warrant. Westley argues that the affidavit included few facts that support a nexus between the Linnet Residence and the drug evidence the officers sought. If the Linnet Residence Warrant is invalidated, then Westley argues that the Hotel Warrant and Arrest Warrant are fruit of the poisonous tree. I agree and would find the Linnet Residence Warrant lacked probable cause.

To establish probable cause, officers must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))). "[T]he affidavit must suggest 'that there is reasonable cause to believe that the specific 'things' to be searched for and

seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'" *McPhearson*, 469 F.3d at 524 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). Whether an affidavit establishes a proper nexus is resolved by examining the "totality-of-the- circumstances" presented. *Gates*, 462 U.S. at 238. A probable cause determination by a judicial officer issuing a search warrant must be upheld if, under the "totality of the circumstances," the issuing officer had a "substantial basis" for finding probable cause. *United States v. Hill,* 142 F.3d 305, 310 (6th Cir. 1998).

In support of its argument that there is probable cause to believe that drugs would be found at the Linnet Residence, the government relies on two cases: *United States v. Gunter*, 266 F. App'x 415, 416–17, 418–19 (6th Cir. 2008) and *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). (Gov. Br., ECF. No. 30, 27–28). In *Gunter*, this Court found a nexus between the illegal activity and the defendant's residence based on: two controlled buys, a driver's license and vehicle registration inquiry revealing the defendant's address and owned vehicles, the officer observing the defendant leave from his residence to one of the controlled buys, and the officer's significant experience that led him to believe that drug dealers typically keep evidence of their crime in their residences. *Gunter*, 266 F. App'x at 416–17, 418–19. The Court in *Gunter* concluded that "this Court's precedents establish that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *Id.* at 419. In *Ellison*, the affidavit giving rise to probable cause "explained that a [reliable] confidential informant had observed someone come out of Ellison's residence, engage in a drug transaction, and then return into the residence." *Ellison*, 632 F.3d at 349. The Court in

*Ellison* found that a drug transaction at a residence is "inextricably connected to the residence for which the search warrant was sought." *Id.* The circumstances in both *Gunter* and *Ellison* are distinguishable from the circumstances present in this case. In *Gunter*, the residence sought to be searched was known to be the defendant's residence based on clear and reliable data, and in *Ellison*, the drug transaction occurred on the residence that sought to be searched. The concurrence agrees with the government and finds that both *Gunter* and *Ellison* establish support for probable cause, but I believe that a key element is missing: Westley's direct connection to the residence.

In this case, looking at the totality of evidence, I would conclude that the minimum requirement to establish probable cause has not been met. Specifically, a nexus between Westley and the Linnet Residence has not been established. The warrant application included an affidavit from an officer stating that probable cause to search the residence existed based on: one controlled buy, drug residue found in the trash at the Linnet Residence, a law enforcement database matching Westley with the Linnet Residence, the officer's experience that drug dealers store weapons and drugs in a residence near the site of their sale, Westley's criminal history, and an active warrant for Westley's arrest with a different police department. The criminal history and active warrant merely establish that Westley was engaged in drug trafficking activity. However, the only evidence provided that the defendant lived at the residence or used the residence for his drug activity, are the purported law enforcement database search, the officer's observation of Westley leaving the residence for the controlled buy, and the trash pull.

First, neither the government nor the officer providing the affidavit for the warrant, described what the database produced, except for a conclusory and vague statement that: "Montel Westley's address of 10701 Linnet Avenue, Cleveland, Ohio was obtained through a clear report, which is a data base commonly used by law enforcement." (Linnet Residence Warrant, R. 27-1,

- 13 -

Page ID # 152). The government provides no way for this Court to evaluate the reliability and relevance of the data provided by this source. This is unlike *Gunter*, where a specific driver's license and vehicle registration inquiry revealed the defendant's address and owned vehicles. *Gunter*, 266 F. App'x 415, at 416–17. Further, Westley denies living at the Linnet Residence, and without more information regarding what the "clear" database produced that links Westley to the residence, this Court is unable to meaningfully review the affidavit's statement. The concurrence dismisses my analysis of the unreliability of the police's database search, and concludes that "[h]ad drug residue not been found in the residence's trash, the reliability of the law-enforcement search would have been more paramount." As explained below, I believe that the concurrence's reliance on the trash pull is misguided, thus the ambiguous description of the law-enforcement search is, according to the concurrence, "paramount."

Second, officers in this case observed only one controlled buy, where Westley was seen leaving the Linnet Residence to the drug sale location. Importantly, the officer did not aver that Westley had been carrying any objects in his hands from the house to the car that would indicate that items related to the drug sale would be located in the Linnet Residence. *Cf. United States v. Miller*, 850 F. App'x 370, 373–374 (6th Cir. 2021) (holding that it was not necessary for the probable cause finding that the warrant indicate that the defendant lived at the apartment, given the direct line established by the "evidence that [the defendant] carried a white grocery bag out of this apartment and traveled straight to the site of the drug deals"); *see also United States v. Crawford*, 943 F.3d 297, 303, 308–309 (6th Cir. 2019) (finding probable cause to search an apartment where officers observed the defendant carrying a small black duffle bag out of the apartment before driving to the location of the controlled purchase, and an informant had previously told officers that the defendant stored his drug supply in a duffle bag). An officer's

- 14 -

observation of a defendant traveling, between his purported residence and the location where the drug transaction occurred, *once*, without evidence that drug related items were transported from the house to the drug sale location, does not suffice to establish a sufficient nexus between the residence and drug transaction.

Finally, this leads to my evaluation of the trash pull evidence. In the officer's warrant application, he points to "numerous clear plastic bags and a broken kitchen plate, with white and brown residue," found in the trash at the Linnet Residence. (*Id.*, at Page ID # 151). The Court must determine whether the officer's observation of Westley leaving the Linnet Residence for the controlled buy, coupled with the trash pull is enough to establish that "there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). "[M]ere trash pull evidence, standing alone, is insufficient to create probable cause to search a residence;" however, "when combined with other evidence of the resident's involvement in drug crimes," probable cause may be established. *United States v. Abernathy*, 843 F.3d 243, 253 (6th Cir. 2016). This Court has found that multiple controlled buys observing the defendant enter and exit the residence prior to a sale, in conjunction with drug items found in a trash pull at that residence, is sufficient to establish probable cause for a search warrant of the residence. For instance, in *Marcilis v. Township of Redford*, 693 F.3d 589, 600–01 (6th Cir. 2012), probable cause was established based on the officers finding of cocaine and marijuana residue at the suspected residence and observing "multiple instances of suspected drug transactions involving [the defendant, in which he] made trips to [the suspected residence] during these transactions." Similarly, in *Hill*, 142 F.3d at 307, this Court held that drug residue found in a defendant's purported residence, combined with reliable information from a confidential informant indicating that the "defendant engaged in drug

trafficking on a regular basis and that he maintained drugs, money, and weapons at the location to be searched," corroborated with "[three months of] periodic surveillance," established probable cause. Evidence collected to support a search warrant in *Hill* and *Marcilis* far surpasses the evidence collected in this case.

The concurrence finds that "the evidence of drug residue in the Linnet residence's trash provides a direct connection between the residence and the evidence sought." However, the concurrence fails to address the fact that there is no link between the Linnet Residence and Westley, which would indicate that the residue found in the trash is connected to *his* drug trafficking. Finding that such a connection is unnecessary is far too broad of an interpretation of probable cause.

Even assuming without proof that the Linnet Residence is Westley's home, which requires us to rely on a vague and ambiguous purported law-enforcement database, "it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016). To establish probable cause, the warrant application must at least provide "facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.* at 383; *see also Ellison*, 632 F.3d at 349 (officer sought a warrant for the residence where the drug transaction occurred on the premises of the residence). And as established in *Abernathy*, a "connection between the small quantity of [drug] paraphernalia recovered from Defendant's garbage and his residence is too logically attenuated to create a fair probability that more drugs were in the residence." 843 F.3d at 253. And in *Abernathy* the evidence was stronger in connecting the defendant with the residence, where the trash pull included USPS certified mail receipts addressed to the defendant and his girlfriend, drug residue and drug paraphernalia. *Id.* at

246. Even with this direct link, our Court found that "[t]he trash pull evidence could have been put in the garbage anywhere from one day to several weeks earlier. The inability to tell when drugs were last in the home diminishes any inference that drugs were still in the home." *Id.* at 255. The Court in *Abernathy* also noted that the amount of residue found in the trash pull is a "[crucial] factor in determining whether probable cause has been established." *Id.* at 256. In this case, brown and white residue was found on plates and plastic bags, with no determinative amount indicated on the warrant application, but the Court can assume that residue implies that a small quantity was retrieved. The concurrence unduly relies on the trash pull and attempts to establish that Westley was involved in drug trafficking and "had an extensive arrest record" that illustrates a history of similar behavior; however, the critical link between his drug trafficking activity and the Linnet Residence remains missing. The search warrant affidavit contained no evidence that Westley distributed narcotics from the Linnet Residence, that he used it to store narcotics, or that any suspicious activity had taken place there.

The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). The affidavit merely points to *one* controlled buy in which Westley was seen leaving the residence prior to the sale, a trash pull at the Linnet Residence revealing drug residue but no mention of Westley's name in the trash itself, Westley's criminal history related to drug trafficking, and an ambiguous and ill-defined search conducted by the officer attempting to link Westley to the Linnet Residence. The information taken together is deficient as "the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity." *Brown*, 828 F.3d at 384. The concurrence's finding that "the evidence of drug residue in the Linnet residence's trash provides a direct connection between the residence and the evidence sought," is

far too broad of an interpretation of probable cause. Without information linking Westley to the specific trash can, the officers did not have probable cause to search the Linnet Residence under the premise that evidence, in relation to Westley's drug trafficking activity, would be found. Upholding the Fourth Amendment is paramount in deterring future police overreach and is "the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantee against unreasonable searches and seizures would be a mere 'form of words.'" *Terry v. Ohio*, 392 U.S. 1, 12 (1968) (quoting *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "Although we do not relish the consequence that the possessor of a large quantity of drugs will escape punishment, our overriding concern is that the police must abide by the Fourth Amendment protections afforded to all of the inhabitants of this great country, guilty and innocent alike." *United States v. Wilson*, 506 F.3d 488, 496 (6th Cir. 2007).

Accordingly, I would conclude that the supporting affidavit did not establish probable cause to search the Linnet Residence and the district court erred in its conclusion to the contrary. Because the search of the Linnet Residence violated the Fourth Amendment, I then turn to whether the evidence seized should be suppressed.

### 3. Good Faith Exception

When police seize evidence during an unconstitutional search, as in this case, a trial court generally must exclude the evidence. *Frazier*, 423 F.3d at 533. However, "[t]he exclusionary rule does 'not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated.'" *McPhearson*, 469 F.3d at 525 (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). In determining whether police acted in good faith, the "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known

that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).

Although the Supreme Court in *Leon* concluded that suppression of evidence is not always an appropriate remedy for unconstitutional searches, the Supreme Court also established four circumstances under which an officer's reliance on the issued warrant cannot be reasonable and where suppression thus remains appropriate: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 914–23).

At issue in this case is the third limitation on the good-faith exception.[4] This limitation prevents introduction of evidence seized under a warrant that issued on the basis of a "bare bones" affidavit. *Id*. A bare bones affidavit is one that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 748). In contrast, an affidavit is not bare bones if, though falling short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *Carpenter*, 360 F.3d at 596.

As discussed above, I believe that the affidavit to the Linnet Residence Warrant did not establish probable cause to believe that there is a sufficient nexus between the illegal activity and

---

[4] Although Westley argues that the misstatement related to the hospital discharge papers renders the Linnet Residence Warrant invalid, as discussed above, the statement was not included in the affidavit to the Linnet Residence Warrant, and thus, is irrelevant to my analysis.

the place to be searched. However, to meet the good faith exception standard only a minimally sufficient nexus must be established. The officers conducted an investigation into Westley, including a controlled buy, observing Westley leave his residence to the buy location, and a database search which provided results connecting Westley to the Linnet Residence—which generally corroborated the confidential informant's initiating tip. *Compare Brown*, 828 F.3d at 385 (declining to apply exception because the officer's affidavit was "devoid of facts connecting [defendant's] residence to [defendant's] alleged drug dealing activity" and "did not indicate . . . that the police ever surveilled [defendant's] home or otherwise attempted any investigation regarding whether the residence was linked to the alleged drug conspiracy"). In this case, the "affidavit was not so lacking in probable cause as to render official belief in its existence entirely unreasonable." *Frazier*, 423 F.3d at 537. I would hold that the good-faith exception therefore applies.

Because Westley's argument that the Hotel Warrant and Arrest Warrant were invalid was based on the theory that the evidence obtained was the fruit of the poisonous tree, the lawfulness of the Linnet Residence Warrant necessarily means the subsequent warrants were also lawful.[5]

### B. Motion for a New Trial

In the court below, Westley filed a motion for a judgment of acquittal or, in the alternative, for a new trial. Westley argued in his motion that: (1) the Linnet Residence Warrant was not supported by probable cause, (2) the Arrest Warrant was deficient because the application

---

[5] As to the misstatement related to the hospital discharge papers, Westley fails to show that the statement was material to the probable cause finding in the Arrest Warrant and subsequent Hotel Warrant. Further, Westley argues in his suppression motion that the Arrest Warrant and Hotel Warrant are the fruit of the poisonous tree and does not argue that the warrants are independently invalid. Accordingly, my finding that the Linnet Residence Warrant is upheld by the good faith exception renders the subsequent warrants valid.

mischaracterized the hospital discharge papers, and (3) government counsel falsely asserted in its closing statement that law enforcement's entry into Westley's hotel room was lawfully based on a security sweep. The district court denied Westley's motion *sua sponte*. On appeal, Westley argues in broad terms that the district court erred in not suppressing the evidence seized through the three warrants executed by the officers in this case, and thus, a new trial is warranted. The government argues that Westley's motion for a judgment of acquittal or, in the alternative, for a new trial was an untimely motion to suppress. For the following reason, I would affirm the district court's denial of Westley's motion for a new trial.

I have addressed and affirmed the district court's judgment as to Westley's first two arguments, and am only left with Westley's argument as to the Hotel Warrant. Rule 12 requires a defendant to raise by pretrial motion a request for suppression of evidence "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). If the defendant fails to timely raise its request for suppression of evidence, the district court may consider it only on a showing of "good cause." *Id.*

The only challenge to the Hotel Warrant below, prior to the motion for a new trial, was that the evidence obtained from the Hotel Warrant was the fruit of the poisonous tree, i.e., that the illegality of the Linnet Avenue search tainted it. Westley fails to argue that there is good cause for his new suppression argument in his motion for a new trial, that the security sweep conducted by the officers was improper, and thus, evidence seized during the search of the hotel should be suppressed. The information related to the contents seized and the events that transpired with respect to the Hotel Warrant were known to Westley prior to the submission of his motion for a new trial. In particular, on the record, the district court asked defense counsel whether the suppression claim as to the hotel room was a fruit of the poisonous tree argument. Defense counsel

confirmed that it was and said "that is exactly what it is. It is fruit of the poisonous tree," but failed to provide any further arguments as to the purported unlawful Hotel Warrant. (Status Conf. Tr., R. 83: Page ID # 996–97). Westley was given many opportunities to argue the legality of the Hotel Warrant prior to trial, including: his suppression motion, supplemental briefing in support of his suppression motion, motion for reconsideration, and *motion in limine*. No reason has been provided by Westley's counsel as to why the argument was only raised after the trial's completion.

The concurrence argues that the district court is required to determine whether good cause exists with respect to an untimely suppression motion; however, the appellate court treats the untimely argument as forfeited and applies the plain-error standard.[6] Under *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015), cited by the concurrence, the Court held that the appellate courts will not treat an untimely suppression argument as waived "unless the circumstances of the case indicate that the defendant intentionally relinquished a known right." *Id.* However, in *Soto*, the defendant had not filed any 12(b)(3) motion in the court below, but rather raised the suppression argument for the first time on appeal. Therefore, the Court's holding in *Soto* accords with the general proposition that if an argument is presented for the first time on appeal, the appellate court reviews it for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

That is not the case here. In Westley's judgment for acquittal or for a new trial, he argued that the government improperly asserted in its closing statement that his arrest at the hotel was lawful. (R. 61). The district court found that regardless of Westley's lack of objection during trial,

---

[6] Note that plain-error review of a forfeited claim is "permissive, not mandatory." *United States v. Olano*, 507 U.S. 725, 735 (1993). This Court has previously declined to perform plain-error review of a forfeited suppression claim which turns on unresolved questions of fact. *See United States v. Turner*, 602 F.3d 778, 787 (6th Cir. 2010) (declining to review for plain error "without the benefit of a suppression hearing below" because "we cannot meaningfully resolve these issues based on this trial testimony alone."). Westley's objection to the hotel search was denied *sua sponte* by the district court, with no hearing, or briefing by the government.

"even if this amounts to an improper argument, it is not sufficient to justify a new trial." (New Trial Order, R. 62, Page ID # 481–82). The district court did not determine whether there was good cause for Westley's delay, but rather summarily denied Westley's motion. The district court's order can be construed as a finding that there was no good cause for Westley's delay, thus we review the district court's determination for an abuse of discretion. *See Soto*, 794 F.3d at 655 ("When a party files an untimely motion in the district court, and the district court finds facts to determine whether the late movant has satisfied the good-cause standard, we review that determination for an abuse of discretion."). As established above, the district court's determination is amply supported by the record and was not an abuse of discretion.

Accordingly, Westley has not established good cause for failing to move to suppress in a pretrial motion that the alleged security sweep of the hotel was improper resulting in an unconstitutional Hotel Warrant. Thus, because Westley failed to comply with Rule 12(b)(3), I would affirm the district court's denial of Westley's motion for a new trial.

### III. CONCLUSION

Accordingly, we **AFFIRM** the district court's judgment.

**KAREN NELSON MOORE, Circuit Judge, joined by Mathis, J., concurring in part in the lead opinion and constituting the majority for Parts I and II below, and concurring in the judgment.** We concur in the lead opinion's Parts I and II.A.1, regarding Westley's motion for an evidentiary hearing. Writing for the majority, we address two issues. First, we hold that probable cause existed to sustain the Linnet warrant, and therefore do not reach the issue of the good-faith exception. Second, we hold that Westley's suppression argument regarding the protective search of his hotel room was not completely waived. Instead it was forfeited, and we review the merits of Westley's argument for plain error. However, Westley cannot meet the heavy burden of plain-error review. We AFFIRM the district court's judgment.

## I. PROBABLE CAUSE

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978)). When the object to be seized is contraband, all that must be shown is a nexus between the object and the place to be searched; in other words, that "there is a fair probability that contraband . . . will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Church*, 823 F.3d at 355.

The district court found that the "officers' investigative work showed a close connection between Westley's conduct and the Linnet Avenue residence." R. 38 (Op. & Order at 5) (Page ID #231). The district court made this finding based on: (1) the recovery of "plastic bags containing residue consistent with drug trafficking from the Linnet Avenue residence's trash," and (2) police

observations of Westley "leav[ing] the Linnet Avenue residence and driv[ing] directly to the controlled drug buy." *Id.* at 5–6 (Page ID #231–32).

This court has previously found that similar facts were sufficient to support probable cause to believe that drugs would be found inside an individual's residence. *See United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("[A] confidential informant had observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence. These incriminating actions are inextricably connected to the residence for which the search warrant was sought."); *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) ("[L]aw enforcement agents observed Defendant visiting his residence right before he traveled to the site of a drug sale. This visit provided a neutral magistrate with a substantial basis to conclude that Defendant may have stopped at his residence to pick up some of his merchandise before meeting his customer.").

The lead opinion argues that *Ellison* is distinguishable because the drug transaction at issue in that case occurred at the residence to be searched. Although that is an important distinction, it ignores the fact that, unlike in *Ellison*, law enforcement in this case found evidence of "residue consistent with drug trafficking [in] the Linnet Avenue residence's trash." R. 38 (Op. & Order at 5–6) (Page ID #231–32). In *Ellison*, the court inferred that controlled substances were likely to be found in the residence because the defendant emerged from the residence and then immediately conducted a drug transaction. Here, there is no inferential step required. Because drug residue was recovered from the Linnet residence's trash, there is plainly "a nexus between the place to be searched and the evidence sought." *Ellison*, 632 F.3d at 349.

The lead opinion makes much of the law-enforcement database search that purportedly showed the Linnet residence as Westley's address. While it may have been prudent to have

included more details regarding the database and its reliability in the affidavit, the totality of evidence is sufficient to establish a nexus between the Linnet residence and evidence of drug trafficking. Had drug residue not been found in the residence's trash, the reliability of the law-enforcement search would have been more paramount. If the sole basis for the search is the inference that evidence of drug dealing is likely to be found at the suspected drug dealer's residence, then identifying the residence as belonging to the defendant is critical. *See United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002) (collecting cases). But here, the evidence of drug residue in the Linnet residence's trash provides a direct connection between the residence and the evidence sought. This court has explained that "an affidavit in support of a search warrant does not need to name or describe the person who sold the drugs or name the owner of the property." *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003). That is because, as the Supreme Court has explained, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher*, 436 U.S. at 556. The drug residue provides the necessary nexus between the Linnet residence and evidence of drug dealing.

Although it may be true that "mere trash pull evidence, standing alone, is insufficient to create probable cause to search a residence," the trash pull evidence does not stand alone here. *United States v. Abernathy*, 843 F.3d 243, 253 (6th Cir. 2016). In *Abernathy*, this court explained that all that is required is "corroborating evidence tying the defendant to drug activity in addition to the trash pull evidence." *Id.* at 256. The controlled buy and Westley's criminal history provide such corroborating evidence. *See id.* (collecting cases). Thus, we hold that the district court correctly found that there was probable cause to support the Linnet warrant.

## II. MOTION FOR A NEW TRIAL

### A. Standard of Review

Westley claims that the protective sweep of his hotel room following his arrest was unconstitutional and that evidence obtained as a result of the sweep should have been suppressed. Appellant Br. at 20, 30–31. As the lead opinion aptly explains, Westley did not object to the introduction of this evidence on these grounds either pretrial or at trial; instead, he claimed that the evidence obtained from the hotel room should be suppressed as fruit of the poisonous tree from the Linnet warrant. *See* R. 22 (Mot. Suppress) (Page ID #84); R. 31 (Supp. Mot. Suppress) (Page ID #169); R. 42 (Mot. Reconsideration) (Page ID #251); R. 53 (Mot. in Limine) (Page ID #388). Westley first mentioned the protective sweep in passing in his motion for a judgment of acquittal or for a new trial. R. 61 (Mot. J. Acquittal at 7–8) (Page ID #474–75). In denying the motion, the district court construed Westley's argument as a belated objection to a statement made during the government's closing argument. R. 62 (Op. & Order at 5–6) (Page ID #481–82).

The Federal Rules of Criminal Procedure require that suppression motions must be made in a timely manner pretrial; if the motion is untimely, then the party must show "good cause" for the district court to consider the motion. FED. R. CRIM. P. 12(b)(3)(C), (c)(3). The government argues that Westley has thus totally "waived" his argument regarding the *Buie* search. Appellee Br. at 32–34. The lead opinion appears to take a similar path, ending its analysis with the conclusion that Westley's argument fails because of his failure to show good cause to excuse his untimely suppression motion. The government's arguments regarding total waiver, however, rely on cases that reference a prior version of the Federal Rules of Criminal Procedure. This court has since made clear that under the current version of the Rules, "courts may no longer treat a party's failure to file a timely Rule 12(b)(3) pretrial motion as an intentional relinquishment of a known

right." *United States v. Soto*, 794 F.3d 635, 652 (6th Cir. 2015). "[U]nless the circumstances of the case indicate that the defendant intentionally relinquished a known right," this court treats the suppression argument as forfeited and applies the plain-error standard. *Id.* at 655–56.

Accordingly, we review Westley's suppression arguments regarding the protective sweep of the hotel room for plain error. The plain error standard requires: "(1) [an] error, (2) that is plain, (3) that affects substantial rights. If all of these requirements are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Kuehne*, 547 F.3d 667, 687 (6th Cir. 2008) (quoting *United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005)).

## B. *Buie* Search

Westley cannot meet the heavy burden imposed by plain-error review. In *Maryland v. Buie*, 494 U.S. 325 (1990), the Supreme Court announced an exception to the warrant requirement that allowed, in some circumstances, "officers [to] tak[e] steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Id.* at 333. *Buie* allowed two types of warrantless searches. First, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Second, a more pervasive search may occur if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

- 28 -

Westley appears to argue that the protective sweep of his hotel room cannot be justified under *Buie* because he exited the hotel room willingly and was arrested in the hallway. Appellant Br. at 30–31. This court has, however, previously upheld a protective sweep of a person's motel room when that person was arrested outside the room, in the motel parking lot. *United States v. Biggs*, 70 F.3d 913, 914–15 (6th Cir. 1995). In that case, the defendant was arrested "between 20 and 75 feet" away from his motel room, and this court held that the officers were justified in entering the room to conduct a protective sweep because "on two prior arrests of [the] defendant he had been accompanied by someone in possession of a firearm." *Id.* at 915. This court has also previously "decline[d] to adopt a bright-line rule that prohibits police officers from conducting a protective sweep of a home every time they arrest a defendant outside that home, regardless of the potential danger from other persons inside." *United States v. Colbert*, 76 F.3d 773, 777 (6th Cir. 1996). The question is therefore whether there are articulable facts that would cause a reasonably prudent officer to believe that Westley's motel room harbored an individual posing danger to the arresting officers.

Based on evidence lawfully obtained prior to the sweep of the hotel room, officers had a plethora of facts to suggest that Westley was engaged in the sale of drugs while carrying firearms. Officers had previously found a stolen firearm, an AR-15 assault rifle with the serial number filed off, a 12-gauge shotgun, several other firearms, and various types of ammunition at Westley's Linnet address. R. 78 (Trial Tr. at 50, 75–100) (Page ID #628, 653–78). During the controlled buy, officers observed Westley carrying a semi-automatic handgun in his waistband. R. 27-1 (Linnet Warrant at 5) (Page ID #152). Westley also had an extensive arrest record that included carrying a concealed weapon, possessing weapons under a disability, resisting arrest, fleeing and eluding, and drug trafficking. *Id.* Finally, there was a delay in between the officers announcing

their presence and Westley exiting the hotel room. R. 78 (Trial Tr. at 137–40) (Page ID #715–18). Given Westley's history with drug trafficking and possessing firearms, a reasonable officer could be concerned that there was another individual in Westley's hotel room and that the delay in Westley exiting was caused by another individual hiding or retrieving a firearm.

This court has also previously held that it is reasonable for officers to enter a person's hotel room to retrieve clothes or shoes for them if they have been arrested outside the hotel room. *Biggs*, 70 F.3d at 916 ("[T]he officers did not act unreasonably in accompanying a shoeless, shirtless man about to be transported to jail back to his motel room. . . . The defendant had clothes and other personal items to be retrieved. . . . The law does not require officers to leave common sense at the door."); *United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) ("[T]he officers knew that the defendant had been arrested twice before for possession of a firearm, which justified them accompanying him back into the room so he could retrieve clothing and shoes."). Westley therefore cannot demonstrate that the district court plainly erred in failing to suppress the evidence obtained as a result of the protective sweep of his hotel room.

### III. CONCLUSION

We concur in parts I and II.A.1 of the lead opinion regarding Westley's motion for a *Franks* hearing. We hold that probable cause existed to sustain the Linnet warrant and that Westley did not demonstrate that the district court plainly erred in failing to suppress the evidence from his hotel room. We AFFIRM the judgment of the district court.